TURNER'S CASE. See Case No. 16,778.

## Case No. 14,249.
### TURNER v. ALDRIDGE et al.
#### [1 McAll. 229.] ¹

Circuit Court, N. D. California. Aug. Term, 1857.

##### EJECTMENT—TITLE—TRESPASSER.

1. The general rule is, that a plaintiff in ejectment must recover upon the strength of his title; not upon the weakness of defendant's.

2. This is not an universal rule, and must be qualified by the case to which it is to be applied.

3. Where a plaintiff has documentary title, aided and accompanied by possession, and the defendant is a mere trespasser, the rule is qualified in its application. Against such defendant the plaintiff, under the decisions of the highest court in this state, is entitled to recover on prior peaceable possession alone.

[Cited in Mickey v. Stratton, Case No. 9,-530.]

This is an action of ejectment, brought for the recovery of eighty-three acres of land, formerly a portion of the ancient rancho of San Antonio. The title of the plaintiff is derived under mesne conveyances, from a grant issued by Governor Sala, in 1822, to one Luis Peralta. Upon this documentary title the plaintiff relies, together with possession from that time by those claiming under the grant until within some two or three years, when the defendants entered upon the premises sued for. No evidence was given by the defendants of title, nor to any other point.

Joseph G. Baldwin and Henry P. Irving, for plaintiff.

E. R. Carpentier, for defendants.

McALLISTER, Circuit Judge (charging jury). The defendants in this case give no evidence of title, and rest their defense exclusively upon the invalidity of the title of the plaintiff, and their possession of the land. No title can be derived from their possession, as it was tortious. The land in controversy was either "vacant." or land claimed "under a foreign title." If vacant. it was land ceded to the United States by Mexico, by the treaty of Guadalupe Hidalgo. Thus viewed, it was protected from the entry of defendants by the act of congress approved March 3, 1807, entitled, "An act to prevent settlements being made on lands ceded to the United States, until authorized by law," which inhibits the entry upon, taking possession of, or settlement on any lands ceded or secured to the United States by any foreign nation, which have not been previously recognized to the person entering, &c., by the United States. 2 Stat. 445. If the land in controversy was not vacant. but claimed by plaintiff, and according to the testimony offered by defendants, claimed also by one Juan Jose, and one Victor Castro, both under Mexican ti-

ties, the entry upon it by the defendants could confer on them no rights, because, being land claimed under a foreign grant or title, it comes within the operation of another act of congress, approved March 3, 1853, entitled, "An act to provide for the survey of public lands in California, the granting of pre-exemption rights, and for other purposes." This act expressly exempts the premises sued for from all pre-emption rights, it being land claimed under a foreign grant or title. 10 Stat. 246. The defendants, therefore, allege no title; but having entered into possession of the premises in violation of law, are to be deemed trespassers and tort feasors; and the question arises, whether parties standing in that attitude can invoke successfully for their protection the rule of law relied on by their counsel in this case. That rule is, that a plaintiff in ejectment must rely on the strength of his own title, and not on the weakness of his adversary's. This is undoubtedly the general and well-settled rule; but it is not of universal application, and must be limited and qualified by the case in which it arises. Love v. Simms's Lessee, 9 Wheat. [22 U. S.] 515. 524.

This rule is to be limited and qualified in this case, if you shall find from the evidence that possession has accompanied the documentary title of the plaintiff. In Swift v. Tyson, 16 Pet. [41 U. S.] 1, the doctrine is enunciated that the decisions of the highest judicial tribunals of a state as to rights and titles having a permanent locality,—such as rights and titles to real estate and other matters immovable and interritorial in their character,—have been adopted as rules of decision in the federal courts by the 34th section of the judiciary act of 1789. In Beauregard v. City of New Orleans, 18 How. [59 U. S.] 497, the court say, "The constitution of this court requires it to follow the laws of the several states as rules of decision, wherever they properly apply; and the habit of the court has been to defer to the decisions of their judicial tribunals upon questions arising out of the common law of the state, especially when applied to the title of lands. No other course could be adopted with any regard to propriety. Upon cases like the present, the relation of the courts of the United States to a state, is the same as that of its own tribunals. They administer the laws of the state; and to fulfill that duty, they must find them as they exist in the habits of the people and the exposition of their constituted authorities." To the exposition given by the supreme court of this state, the court will now advert. In the first year of our political existence as a state, we find the case of Ladd v. Stevenson, 1 Cal. 18. In that case, one who had been turned out of possession under the order of an officer who had no jurisdiction, was held entitled to recover on his prior peaceable possession. In Brown v. O'Connor, Id. 421, the court say, "However defective then the title of the plaintiff may be,

there was testimony tending to show that he was in prior peaceable possession of the premises; and it is to be presumed that the jury found that the plaintiff had the prior and best right to the possession." In that case the plaintiff relied on what was considered defective documentary title in addition to his possession. In Hutchinson v. Perley, 4 Cal. 33, the court said, "Possession is always prima-facie evidence of title; and proof of prior possession is enough to maintain ejectment against a mere naked trespasser." In Hicks v. Davis, Id. 67, the court said, "The action is for the recovery of land upon a claim of title based upon uninterrupted prior possession for several (three) years. We have always determined that possession is prima facie evidence of title, and this principle is firmly fixed in all common-law jurisprudence. That its efficacy has been impaired by modifications and conditions. by some judges in other countries, is clearly manifested by the decisions. But unlike these, I see no reason to depart from the strictest simplicity and directness in the application of the rule." In Winans v. Christy, 4 Cal. 70, the court say, This was not a case of mere "possession, but possession coupled with color of title, which must prevail except where a better title is shown in the defendants." "Neither are the plaintiffs although they alleged in their declaration a fee-simple title, compelled to prove the same. They could properly rely upon prior possession if they choose to do so." In Bequette v. Caulfield, 4 Cal. 278, the court say, "Possession gives a right of action against a mere trespasser, even where title may be shown to exist in another."

The doctrine sustained by this unbroken current of authority in this state, is maintained by the state tribunals in Connecticut, Vermont, Ohio, Kentucky, Virginia, and Tennessee, and by a recent decision of the supreme court of New York. It has received the approval of the supreme court of the United States. In Christy v. Scott, 14 How. [55 U. S.] 282, Mr. Justice Curtis, delivering the opinion of the court, uses the following language: "But a mere intruder cannot enter upon a person actually seized, eject him, and then question his title, or set up an outstanding title in another. The maxim that the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's, is applicable to all actions for the recovery of property. But if the plaintiff had actual prior possession of the land, this is strong enough to enable him to recover it from a mere trespasser, who entered without any title." He may do so by a writ of entry, where that remedy is practiced, or by an ejectment, or he may maintain trespass.

I have, gentlemen of the jury, contrary to my usual custom, cited authorities to sustain the conclusion to which I have come, and shall embody in an instruction to you. This has been done, because it has been urged with great earnestness by counsel in this case, that the general rule which requires a plaintiff in ejectment to recover upon the strength of his own title, enables a mere trespasser to maintain his possession if he can discover defects in any of the links of the chain of testimony which establishes the title of the plaintiff whom he has disseized. Such views have been sustained, perhaps, by some judges. Such views are akin to that doctrine which formerly obtained, in semi-civilized times, in England, and has been characterized as—

"That good old rule, that simple plan,
　That those should take who have the power,
　And those should keep, who can."

Such is not the law which has been enunciated by the highest judicial tribunal of this state, nor by the supreme court of the United States. I therefore instruct you that, first, if you find from the evidence that the documentary title of the plaintiff has been accompanied by possession of the premises, his title, whether his documentary title be a perfect legal title or not, is sufficient to maintain this action against these defendants; and, second, if you find that the defendants entered upon the possession of plaintiff, such entry was tortious, and defendants showing no title are to be deemed trespassers; and that the rule that a plaintiff must recover upon the strength of his own title, and not upon the weakness of defendant's, is not applicable to a case like the present, but must be qualified to meet its circumstances.

Verdict—"Guilty."