[No. 10704. Department One. March 8, 1913.]

HARTWELL SAMUEL DICUS *et al.*, *Respondents*, v. GEORGE
MAJOR *et al.*, *Appellants*.[1]

EJECTMENT—SUPERIOR TITLE—BURDEN OF PROOF—OUSTER. In eject-
ment, proof that plaintiff was in peaceable exclusive possession and
was forcibly ousted by the defendants raises a presumption of su-
perior title, and casts the burden of proof upon the defendants.

EJECTMENT—EVIDENCE—SUFFICIENCY. In ejectment to determine
a disputed boundary line, plaintiff's *prima facie* case of superior title
by reason of prior possession, supported by the fact that the ad-
joining owners had agreed upon the location and platted to the line
claimed, is not overcome by proof that city officials had fixed the
line four feet therefrom, where there was no evidence of the
methods followed in the surveys made to determine the location.

[1]Reported in 130 Pac. 474.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 27, 1912, upon findings in favor of the plaintiffs, in an action of ejectment tried to the court.   Affirmed.

*Douglas, Lane & Douglas*, for appellants.

*Murphy & Wall*, for respondents.

PARKER, J.— This is an action to recover possession of a strip of land about four feet wide and 133 feet long, lying along the common boundary line of two lots in different additions to the city of Seattle, which the plaintiffs claim they have been unlawfully dispossessed of by the defendants.   A trial before the court without a jury resulted in findings and judgment in favor of the plaintiffs, from which the defendants have appealed.

This is, in substance, a boundary dispute, the question being, where upon the ground is the common boundary line of the adjoining lots of the respective parties.   Respondents are the owners of fractional block 16, consisting of a single lot, in Washington addition to the city of Seattle, which addition and lot are bounded upon the south by the line dividing the north and south halves of section 17, township 25 north, range 4 east.   Appellants are the owners of lot 1, in block 31, of Lake Union addition to the city of Seattle, which addition and lot are bounded on the north by the same half section line, the lots of the respective parties having a common boundary along their entire length of 133 feet.   Appellants insist that this line is some four feet to the north of where respondents claim it to be.

In March, 1883, the owners of land in the south half of the section, having no title to the adjoining land in the north half, surveyed and platted their land into lots, blocks, and streets, and caused the plat thereof, called Lake Union addition, to be duly recorded in the office of the auditor for King county.   It is plain from this plat that they intended to plat all of their land up to the half section line, and that that line

should be the northern boundary of their addition. Not only was this land platted upon paper, but it was actually surveyed and staked upon the ground; the northern boundary being plainly marked by stakes at block corners, at least one of which stakes is still standing where it was originally placed at the northeast corner of appellants' lot one. While it is plain that this north boundary line of the addition was then marked by the owners' survey thereof as the half section line, it is not shown in what manner it was then ascertained to be such half section line.

Very soon thereafter, the owners of land in the north half of the section bordering upon this line surveyed and platted their land into lots, blocks, and streets, and caused the plat thereof, called Washington addition, to be recorded in the office of the auditor for King county. In surveying and platting this addition upon the ground, the owners conformed to the platting of Lake Union addition as to size of blocks and width of streets, and adopted the north boundary line of that addition as surveyed and staked upon the ground as the south boundary line of Washington addition. Since then there have been some fences constructed on the line thus marked upon the ground by lot owners other than the owners of the lots here involved, upon the assumption that that was the correct common boundary line of the two additions.

It appears that no doubt or controversy arose between owners of property along this line as to its correct location until within the last few years, when surveys made by the city engineering department indicated that the half section line was not as originally marked upon the ground in the survey of these additions, but that it was some four feet to the north thereof as now claimed by appellants; but, as in the case of the original survey of the additions, we have no evidence in this record as to the manner in which the city determined the location of this half section line. Whether the line was determined by either survey in the proper manner according to the legal method of subdividing sections in order to deter-

mine the correct lines of legal subdivisions, we are not informed.

Respondents became the owners of block 16, of Washington addition, in July, 1907. Soon thereafter they improved this block by building a dwelling house thereon and improving their lawn adjacent to their dwelling, clear up to the common boundary line of the additions as originally surveyed and marked upon the ground by the stakes, one of which, as we have noticed, is still standing as marking the northeast corner of appellants' lot and the southeast corner of respondents' lot. Respondents thus continued in peaceable and exclusive possession of their lot as originally marked upon the ground, until March 10, 1911, when they were forcibly ousted of their possession of the strip here involved. Very soon thereafter, respondents commenced this action to recover possession of the land they had been thus dispossessed of.

Counsel for appellants, seeking at the outset to avoid the burden of proof and keep it upon respondents, invoke the general rule that a plaintiff seeking to recover possession of land must do so upon the strength of his own title and not upon the weakness of that of his adversary. Passing for the moment the question of the superiority of the respective paper titles of the parties, let us see where the burden of proof would rest. We assume that neither of the parties has acquired title against all the world by adverse possession; but it by no means follows that respondents have not superior title to that of appellants, viewed from the standpoint of possession alone. We have seen that respondents were in peaceable, exclusive possession of the land in controversy when they were forcibly ousted of their possession by appellants. The law seems to be well settled that, in such cases, the party so ousted, suing to recover possession, makes a *prima facie* case entitling him to so recover when he has shown that he was in peaceable, exclusive possession, and was forcibly ousted therefrom by the defendant. That is, he has by such a showing proven *prima facie*

that he has the superior title. In the early California case of *Hutchinson v. Perley,* 4 Cal. 33, 60 Am. Dec. 578, there was involved the sufficiency of a complaint in ejectment where the plaintiff rested his title upon his peaceable possession alone, at the time he was ousted. Sustaining this complaint as stating a cause of action, the court said:

"Possession is always *prima facie* evidence of title, and proof of prior possession is enough to maintain ejectment against a mere naked trespasser. The allegation that the plaintiff was in possession at the time of the ouster complained of, is a sufficient allegation of title to make the declaration good. The demurrer was, therefore, improperly sustained."

It is manifest that, if such a complaint states a cause of action, proof to the same extent would make it a *prima facie* case. Among the numerous decisions in harmony with this view, the following may be noted: *McLawrin v. Salmons,* 11 B. Mon. (Ky.) 96, 52 Am. Dec. 563; *Green v. Jordan,* 83 Ala. 220, 3 South. 513, 3 Am. St. 711; *Administrator of Jones v. Nunn,* 12 Ga. 469; *Ashmead v. Wilson,* 22 Fla. 255.

In the text of 15 Cyc. 129, the rule is stated thus:

"A prior possession creates a presumption of title which entitles plaintiff to recover against a naked trespasser. And this presumption can only be rebutted or overcome by showing title in defendant, or an outstanding title in a third party, or that plaintiff's title was subordinate and permissive, or that the action is barred by the statute of limitations."

See note in *Hancock v. McAvoy* (Pa.), 18 L. R. A. 784.

Supposing, now, that all parties had rested with the evidence showing these facts of possession and ouster, it is plain that respondents would have been entitled to judgment for recovery of the land. This being true, it follows that thereupon the burden of proof shifted to appellants, and it was for them to show a superior title, independent of possession of either party. Have they then maintained this burden of proof to the extent that they are entitled to retain possession? We are constrained to hold to the contrary. It is true that the evidence introduced of the city surveys is of

some weight, tending to show the location of the half section line as claimed by appellants. But we regard the surveys made by the owners of the respective additions establishing the common boundary, as they plainly intended on the half section line, of at least equal weight as evidence showing the true location of that line. It is manifest that neither of these is very cogent or convincing as to the true location of the half section line, because we have no evidence as to the methods followed in either survey in determining the location of the half section line. As to whether that line was determined by a proper legal subdivision of the section, we are wholly in the dark in both cases. It seems clear to us that appellants have not overcome the *prima facie* case made by respondents by their showing of the fact that they were in peaceable possession and were forcibly ousted by appellants. This, we think, turns the scale in favor of respondents and entitles them to recover.

The judgment is affirmed.

CROW, C. J., CHADWICK, GOSE, and MOUNT, JJ., concur.